| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2930 | **DATE** | 11/1/2001 |
| **CASE TITLE** | Ricky Cooper, et al vs. Carlos J. Salazar | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth in this opinion, Cooper's summary judgment motion is granted (61-1) and Salazar's is correspondingly denied. (58-1) |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | **NOV 0 2 2001** |
| ✓ | Docketing to mail notices. | date docketed |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office |

Document Number

73

01 NOV -1 PM 3:57

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICKY COOPER, et al., etc.,           )
                                      )
                    Plaintiffs,       )
                                      )
       v.                             )     No.  98 C 2930
                                      )
CARLOS J. SALAZAR, Director,          )
Illinois Department of Human          )
Rights,                               )
                                      )
                    Defendant.        )

DOCKETED
NOV 0 2 2001

## MEMORANDUM OPINION AND ORDER

Class representatives Ricky Cooper, Anna Marie Klups and
Chitunda Tillman bring this class action[1] under 42 U.S.C. §1983
("Section 1983"), asserting that the policies, practices and
procedures used by the Illinois Department of Human Rights
("Department") to assess discrimination claims violate the
Fourteenth Amendment's Due Process Clause.  Both Cooper and
Department's Director Carlos Salazar ("Salazar"), the Section
1983 defendant, have moved for summary judgment under Fed. R.
Civ. P. ("Rule") 56, and each has complied with this District
Court's LR 56.1 by providing a statement of material facts.[2]  For

---

[1]  This opinion will refer to the entire class as "Cooper,"
treated for convenience as a singular noun.

[2]  LR 56.1(a) and (b) are designed to facilitate resolution
of Rule 56 motions by calling for evidentiary statements and
responses to such statements (in each instance with record
citations), thus highlighting the existence or nonexistence of
factual disputes.  This opinion cites to Cooper's  LR 56.1(a)(3)
statement as "C. St. ¶ --," to Salazar's LR 56.1(a)(3) statement
as "S. St. ¶ --," and to the parties' Joint Stipulation of
Undisputed Facts as "Jt. Stip. ¶ --."  This opinion employs the

the reasons set forth in this opinion, Cooper's summary judgment motion is granted and Salazar's is correspondingly denied.

## Summary Judgment Standards

Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non- moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 264, 265 n.2 (7th Cir.1997)). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective--one that this Court has often described as Janus-like--that sometimes involves the denial of both motions. That has not occurred here because no material facts are in dispute. Instead the question is one of law: whether Department's procedures infringe the class' right to due process.

## Background

Two separate administrative agencies were created by the Illinois Human Rights Act ("Act," 775 ILCS 5/1 to 5/10$^3$): the

---

same "C." and "S." abbreviations in referring to the parties' exhibits ("Ex."), memoranda ("Mem.") and responsive memoranda ("R. Mem.").

   [3] Further citations to the Act will take the form "Act § --," using the Act's internal numbering and omitting references to "775 ILCS 5/."

Illinois Department of Human Rights ("Department")(Act §7-101) and the Illinois Human Rights Commission ("Commission")(Act §8-101). Under the Act employees who believe they have been discriminated against in their employment are provided with an administrative process to enforce their rights to be free from such discrimination (<u>Baker v. Miller</u>, 159 Ill.2d 249, 266, 636 N.E.2d 551, 559 (1994)). Since the Act was first passed, the procedures it specifies for investigating Charges of Discrimination have been amended several times. To put Cooper's constitutional challenges in context, a brief description of those procedures follows.

First the complainant files a Charge of Discrimination ("Charge") with Department (Act §7A-102(A)(1)). Once a Charge has been filed, Department must serve the respondent and commence a full investigation of the allegations (Act §7A-102(B) and (C)). Although the investigations are informal, investigators have the right to subpoena both witnesses and documents (Act §7A-102(C)(2)).

Usually a fact-finding conference is convened as part of an investigation to obtain evidence, identify the issues in dispute, ascertain the positions of the parties and explore settlement possibilities (Act §7A-102(C)(4); 56 Ill. Admin. Code

§2520.440(a)[4]). While the investigator and the parties are
permitted to take notes, no tape recording or stenographic record
is permitted (56 Code §2520.440(c)). Witnesses may be excluded
from the conference at the investigator's discretion, and parties
are not permitted to question witnesses directly (id.). Parties
may request that the investigator pose certain questions (Jt. St.
¶82), but the investigator has the discretion to honor or not to
honor such requests (id. ¶83).

When the investigation is complete, the investigator makes a
written investigation report ("Report") to Department's Director
(Act §7A-102(D)). Based on the Report, the Director determines
whether there is "substantial evidence" that a civil rights
violation has been committed (Act §7A-102(D)(2)).[5] Until
January 1, 1996 Department's policy guide instructed the Director
to enter a finding of substantial evidence if the determination
turned on witness credibility--the credibility issues were
resolved at the next stage in the proceedings (Lemon v. Tucker,
695 F. Supp. 963, 972-73 (N.D. Ill. 1988), aff'd sub nom. Luckett
v. Jett, 966 F.2d 209 (7th Cir. 1992)). But the Act was amended

---

[4] Further citations to the Illinois Administrative Code
will take the form "-- Code §--," listing the chapter number
first and the section number last but omitting "Ill. Admin."

[5] Act §7A-102(D)(2) defines "substantial evidence" as
"evidence which a reasonable mind accepts as sufficient to
support a particular conclusion and which consists of more than a
mere scintilla but may be somewhat less than a preponderance."

4

on January 1, 1996 so that the Director is expressly allowed to consider credibility in making the substantial evidence determination (Act §7A-102(D)(2); <u>Webb v. Lustig</u>, 298 Ill. App.3d 695, 702, 700 N.E.2d 220, 224 (4th Dist. 1998)).

If the Director finds that a Charge is supported by substantial evidence and further efforts to settle the claim are unsuccessful, Department files a formal complaint with the Commission (Act §7A-102(F)) and a full hearing is conducted before an administrative law judge, during which the parties are represented by counsel and are entitled to engage in discovery and cross examine witnesses (56 Code §§5300.720, 5300.750). On the other hand, if the Director finds no substantial evidence of a violation and recommends dismissal of a Charge, the complainant may file a Request for Review (Act §7-101.1). Requests for Review of Charges filed before January 1, 1996 had been decided by Commission (Act §8-103), but since then Requests have been decided by Department's Chief Legal Counsel ("Counsel") (Act §7-101.1(A)).

Until December 29, 1997 Department regulations permitted complainants preparing Requests for Review to inspect investigation materials and witness statements obtained during Department's investigation (2 Code §926.210 (1994)). But on that date a new regulation barred access to all such materials, except the investigator's report, until after the Charge is dismissed or

otherwise completely disposed of (2 Code §926.210 (1997)). Final dismissal orders are subject to judicial review by the Illinois Appellate Court (Act §8-111(A)).

On January 29, 1999 this Court granted Cooper's request for a preliminary injunction ordering the Director (1) to provide complainants pursuing Requests for Review with access to their investigative files, including notes about witness statements but excluding certain sensitive materials, and (2) to preclude investigators from relying on assessments of witness credibility in making substantial evidence recommendations and drafting investigation reports (Cooper v. Bombela, 34 F. Supp.2d 693, 701 (N.D. Ill. 1999), aff'd sub nom. Cooper v. Salazar, 196 F.3d 809 (7th Cir. 1999)). Now Cooper argues that three aspects of Department's procedures violate due process:

> 1. Department's reliance on credibility determinations in making its substantial evidence determinations;

> 2. Department's denial of complainants' access to their investigation files when preparing Requests for Review; and

> 3. Department's vesting of jurisdiction over Requests for Review with its Counsel rather than with Commission.

## Due Process Analysis

Analysis of a procedural due process claim involves two steps: identifying an underlying property right and assessing

6

what process is due to protect that right (Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)). It is undisputed that plaintiffs have a property interest in their discrimination claims (Logan, 455 U.S. at 428-33; Lemon, 695 F. Supp. at 967). Hence this opinion need address only the second question: whether the Act's procedures provide sufficient process to protect complainants' rights in their discrimination Charges.

Although the specific demands of due process vary depending on the importance of the interests and the nature of the proceedings involved (Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)), complainants are certainly entitled to the core requirement of the opportunity to be heard "at a meaningful time and in a meaningful manner" (Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). To determine precisely what is required in a particular context, a court engages in the familiar three-step balancing process set out in Mathews, id. at 335, under which the process due depends on (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation under the challenged governmental course of action and the probable value of providing additional procedural safeguards and (3) the government's interest, including the fiscal and administrative burdens of additional procedural safeguards (id.). In that balancing process the complainant's interest in a fair hearing for his or her discrimination claim is entitled to substantial

weight (<u>Logan</u>, 455 U.S. at 434). So here the key factors in assessing the competing interests are whether additional procedures would reduce the chances of erroneous dismissals and whether providing additional procedures would be onerous for Department.

<u>Credibility Determinations</u>

Cooper argues that the Director's reliance on Department investigators' credibility determinations in making substantial evidence determinations violates due process because those investigators evaluate credibility without affording complainants an opportunity to confront or cross examine witnesses or otherwise address credibility disputes. Department maintains that there are no rights to confrontation or cross-examination in non-adjudicatory administrative proceedings.

While purely investigatory proceedings such as general fact-finding investigations do not require use of "the full panoply of judicial procedures" (<u>Hannah v. Larche</u>, 363 U.S. 420, 441-42 (1960)), due process may require cross-examination and confrontation of adverse witnesses in proceedings where important decisions turn on factual determinations (<u>Greene v. McElroy</u>, 360 U.S. 474, 496-97 (1959); <u>Goldberg v. Kelly</u>, 397 U.S. 254, 269-70 (1970)). In this instance the Act calls for the decision to dismiss a Charge or to allow it to go forward to turn on just such a factual determination: an investigator's evaluation of

witness credibility.[6]  Because employment discrimination cases are particularly likely to involve issues of credibility and intent (Alexander v. Wisconsin Dep't of Health and Family Servs., 263 F.3d 673, 681 (7th Cir. 2001)), the due process protections of confrontation and cross-examination are particularly important to guard against the danger of investigators relying on false or colored testimony or documents or even on honest mistakes in recommending erroneous dismissals without adequate review (Greene, 360 U.S. at 496-97; Goldberg, 397 U.S. at 269-70).  As Justice Marshall put it in his plurality opinion in Brock v. Roadway Express, Inc., 481 U.S. 252, 266 (1987), dealing with hearings regarding the discharge of employee whistleblowers:

> Moreover, the primary function of the investigator is not to make credibility determinations....Final assessments of the credibility of supporting witnesses are appropriately reserved for the administrative law judge, before whom an opportunity for complete cross-examination of opposing witnesses is provided.

Proceedings that adjudicate rather than simply investigate claims may likewise implicate the due process safeguards of cross-examination and confrontation (Hannah, 363 U.S. at 451; Cooper, 196 F.3d at 815).  Contrary to the Director's contention (S. Mem. 7), Department's proceedings are really adjudicative, for an agency is purely investigatory only where it "does not and cannot take any affirmative action which will affect an

---

[6]  This practice was preliminarily enjoined by this Court in its January 29, 1999 order (Cooper, 34 F.Supp.2d at 701).

individual's legal rights" (<u>Hannah</u>, 363 U.S. at 441). In determining the nature of an agency's proceedings, the relevant inquiry is a functional one, rather than one based on entitlements given by the agency to its own work (<u>id</u>. at 451; <u>Cooper</u>, 196 F.3d at 815). Because Department's dismissal of a complainant's discrimination Charge is a final disposition on the merits, permanently altering the complainant's legal rights to seek redress for the alleged violations, Department's function is an adjudicatory one and the complainant is thus entitled to attendant procedural safeguards. As <u>Hannah</u>, 363 U.S. at 442 has said:

> Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.

Although two state intermediate appellate decisions have characterized Department's proceedings as investigatory and not adjudicative (<u>Willis v. Illinois Dep't of Human Rights</u>, 307 Ill. App.3d 317, 326, 718 N.E.2d 240, 247 (4th Dist. 1999); <u>Webb</u>, 298 Ill. App.3d at 703, 700 N.E.2d at 225), those cases fail to give full recognition to the nature of the proceedings at issue. Thus <u>Webb</u>, <u>id</u>. at 703, 700 N.E.2d at 225 said:

> Until a complaint is issued by the Department, the proceedings are investigatory (determining whether the charge should be brought) and not adjudicatory (determining whether the charge has been proved). The Act gives those separate functions to separate agencies, the Department and the Human Rights

10

> Commission. The Department's dismissal of the charge
> for lack of substantial evidence occurs at the
> investigatory stage.

But that formulation overlooks the conflation of investigation

and adjudication at play here, for a determination by Department

that a charge should not be brought--a determination made, after

all, in reliance on an investigator's credibility evaluation--is

itself a determination of whether the charge has been or is

capable of being proved.

Under the current system for Requests for Review from

dismissals, factual findings are sustained by Counsel unless they

are "against the manifest weight of the evidence" (Jt. St. ¶39).

That standard does not give complainants an adequate opportunity

to confront or to cross examine witnesses against them at the

review stage. Because the same standard for sustaining findings

of fact is used in judicial review by the Illinois Appellate

Court (Act §8-111(A)(2)), that initial denial of meaningful

confrontation and cross-examination rights is never cured, as it

can sometimes be by adequate process in a later proceeding

(Brock, 481 U.S. at 266 (plurality opinion); Loudermill, 470 U.S.

at 545; Mathews, 424 U.S. at 349). Just so, in the public

employment context Head v. Chicago Sch. Reform Bd. of Trustees,

225 F.3d 794, 803 n.8 (7th Cir. 2000) has said:

> Limited pre-termination procedures are permissible only

if full post-termination procedures are available.[7]

Department seeks to rely on a series of cases under the Social Security Act, including Richardson v. Perales, 402 U.S. 389 (1971), to support its argument that reliance on credibility assessments in substantial evidence determinations is constitutional. But that argument overlooks critical differences between Department's procedures and those involved in Social Security cases. Social Security claimants are entitled to review the documentary evidence used in making the decision under review before or during a hearing, as well as to call and cross examine witnesses (20 C.F.R. §§404.916 (b)(3) and (4), 404.929). In sharp contrast, complainants here have not only been denied the opportunity to cross examine witnesses but have also been prohibited from reviewing documentary evidence supporting credibility determinations against them until their cases have been finally disposed of (2 Code §926.210).[8] For the preparation of their Requests for Review, they have been given access only to

---

[7] [Footnote by this Court] Department also argues that Lemon, 695 F. Supp. 963, aff'd sub nom. Luckett v. Jett, 966 F.2d 209 (7th Cir. 1992) previously upheld the constitutionality of Department's investigative procedures. But the procedures approved in Lemon are not the same as those challenged here. Most importantly, at that time a Request for Review was "a de novo review and the Commission [was] not bound by factual determinations made at the Department level" (Lemon, 695 F. Supp. at 972).

[8] This Court also preliminarily enjoined that practice on January 29, 1999.

the summary of evidence contained in the investigator's report.
That has denied them an opportunity to contest the authenticity
and reliability of documents relied upon in making adverse
credibility determinations.

Although it could add some modest burdens to reserve
credibility determinations until the adjudications by Commission,
any such burdens would not justify denying complainants the
opportunity for confrontation and cross-examination before
dismissal of their claims on the basis of adverse credibility
determinations. To prohibit reliance on credibility
determinations at the investigatory stage may well result in some
cases going forward that would otherwise be dismissed at the
outset. But even viewing the facts in the light most favorable
to Department, it has not shown that would pose a significant
administrative or fiscal burden--and it must be recognized that
such early dismissals could surely include cases that would come
out the other way if witnesses were discredited by the otherwise
missing cross-examination.

Department argues that under Cooper's theory "nearly every
claim filed with the Department should be passed to the
Commission" for adjudication (S. Mem. 11). Not so--Department's
own earlier statistics show that even when Department has not
been permitted to weigh credibility, a significant number of
cases have still been dismissed without proceeding to full

adjudication. Before the 1996 amendment, when the procedure was to look for the existence of substantial evidence rather than to base decisions on assessments of credibility, many cases were dismissed for lack of substantial evidence without ever reaching Commission (Drager Dep. Ex. 13).[9] Additionally, since this Court's issuance of the preliminary injunction that enjoined Department from weighing credibility, a substantial number of Charges have still been dismissed before reaching Commission (S. Ex. A at 6).[10] Hence Department has not shown that case management presents an undue burden with the addition of procedural protections.

In that respect, Department has offered nothing other than

---

[9] According to Department's Caseload Status Report for fiscal year 1999 (Drager Dep. Ex. 13):

1. In fiscal year 1994 Department received 29,703 inquiries, filed 4,491 charges with Commission and found a lack of substantial evidence in 842 cases.

2. In fiscal year 1995 Department received 29,216 inquiries, filed 4,393 charges with Commission and found a lack of substantial evidence in 915 cases.

[10] Department's Caseload Status Report for fiscal year 2001 (S. Ex. A at 6) reflects these figures:

1. In fiscal year 1999 Department received 21,936 inquiries, filed 3,756 charges with Commission and recommended a finding of lack of substantial evidence in 1,475 cases.

2. In fiscal year 2000 Department received 19,573 inquiries, filed 3,856 charges with Commission and recommended a finding of lack of substantial evidence in 1,082 cases.

its unsupported ipse dixit that "the costs and administrative burdens to government of more procedures would be very great" (S. R. Mem. 5). It asserts--again without anything but its own say so as attempted verification--that if adversarial procedures are required at the investigation stage, every case will require a "legally-trained referee" and all proceedings would have to be "on the record," thereby entailing "a greatly increased expenditure of funds" (id. at 3). Even aside from the questionable nature of that in terrorem assertion as such, merely to urge that a procedure would be costly without even an attempt at proof or quantification places nothing tangible on the scale to carry out the balancing test under Mathews, 424 U.S. at 335.

Most importantly in substantive terms, the risk of erroneous dismissals is bound to decrease if credibility determinations are reserved for adjudication before Commission. As indicated earlier, wherever credibility is determinative, the opportunity to challenge documents and witnesses against them protects claimants against decisions based on false or misleading testimony or honestly mistaken beliefs.

In sum, the presumptive considerations that led to issuance of the preliminary injunction have been more than abundantly confirmed. Department is permanently enjoined from relying on any credibility determinations made without affording complainants an opportunity to confront and cross examine

witnesses against them.

## Access to Investigative Files

Cooper further argues that Department's procedure denying
complainants access to their investigative files until after the
Request for Review process has been completed violates due
process.  If that is indeed so, Department should provide
complainants with access to all documents available to Counsel
during the Request for Review inquiry, including the
investigators' notes of witness interviews.  In response,
Department maintains that complainants have no right to such file
review because there is no right to pretrial discovery in
administrative proceedings.

Although there is no due process right to pretrial discovery
as such (Society of Lloyd's v. Ashenden, 233 F.3d 473, 480 (7th
Cir. 2000); Silverman v. CFTC, 549 F.2d 28, 33 (7th Cir. 1977)),
that does not of itself end the constitutional inquiry (Wardius
v. Oregon, 412 U.S. 470, 474 (1973); United States v. Harbin, 250
F.3d 532, 540 (7th Cir. 2001)).[11]  Due process implicates
fundamental fairness, a basic tenet of which is "the opportunity
to be heard at a meaningful time and in a meaningful manner" (In

---

[11]  Indeed, pretrial discovery is not an apt analogy because
the file access sought here is more akin to obtaining access for
purposes of appeal.  Here complainants seek access while they
pursue a Request for Review after a decision on the merits of
their claim, such as a dismissal for lack of substantial evidence
(Act §7A-102(D)(2)(a)).  By definition pretrial discovery,
however, precedes a decision on the merits.

re Hancock, 192 F.3d 1083, 1086 (7th Cir. 1999), citing Mathews, 424 U.S. at 333). Without access to the information in their investigative files, complainants' opportunity to respond is less than meaningful for two reasons:

1. Giving complainants access to nothing but their Reports limits the information they obtain to what the investigator chooses to share.

2. Delaying access to the investigative file until the Request for Review process has been complete means that by the time complainants see the evidence, their claims have been finally dismissed from the administrative process.

Under Act §7A-102(D) the Report is written by the investigator at the conclusion of the investigation and is submitted to the Director for use in determining whether a charge is supported by substantial evidence or should be dismissed. It contains the investigator's summary of facts, summaries of documents and witness statements and a statement of reasons for the finding (id.; S. Mem. 15).[12] As such, the Report is

_____

[12] Act §7B-102(D)(1) provides:

The report shall contain:

(a) the names and dates of contacts with witnesses;

(b) a summary and the date of correspondence and other contacts with the aggrieved party and the respondent;

(c) a summary description of other pertinent records;

inadequate to provide complainants with a meaningful opportunity to respond to evidence against them. Witness statements are particularly important in employment discrimination cases, where credibility is crucial (and often determinative)(Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 393 (7th Cir. 1998)). But complainants' only access to what witnesses have said is filtered through the Report, which includes mere summaries of just such portions as the investigator feels are relevant (and, too often, as will support the investigator's viewpoint). Control over what information to include and in what level of detail lies exclusively with the investigator. Because many witness interviews are conducted ex parte (Jt. St. ¶65) and because no transcripts are made of any interviews (id. ¶76), complainants trying to fashion arguments that their claims were erroneously dismissed are forced to rely on an investigator's summary rather than on any complete and objective record.

Moreover, Counsel is not limited to considering what is in the Report during the Request for Review inquiry (C. St. ¶¶66, 71-74), and the investigator's notes of witness interviews are left as part of the file that Counsel may review (Jt. St. ¶75). Without access to the file itself, complainants have no way of knowing what underlying evidence not mentioned in the Report will

---

       (d)   a summary of witness statements; and

       (e)   answers to questionnaires.

potentially be used against them by Counsel, and they certainly
have no meaningful opportunity to oppose that evidence
effectively.[13]

Nor is due process satisfied by affording file access to
complainants at the stage of judicial review before the Illinois
Appellate Court.  At that point the review is limited to whether
Counsel's Request for Review decision was arbitrary and
capricious or an abuse of discretion (<u>Folbert v. Department of
Human Rights</u>, 303 Ill. App.3d 13, 25, 707 N.E.2d 590, 599 (1st
Dist. 1999); <u>Webb</u>, 700 N.E.2d at 226).  There the reviewing court
"cannot reweigh the evidence," and findings of fact "are entitled
to deference and this is particularly true of credibility
determinations" (<u>Folbert</u>, 303 Ill.App.3d at 25, 707 N.E.2d at
599).  Access at that appeal stage is thus of limited utility at
best.  While Counsel could have conducted additional

---

[13]   Department cites Third Circuit cases (<u>Copeland v.
Philadelphia Police Dep't</u>, 840 F.2d 1139, 1145 (3d Cir. 1988);
<u>Fraternal Order of Police, Lodge No. 5 v. Tucker</u>, 868 F.2d 74,
79-80 (3d Cir. 1989)) to urge that oral notice to parties of the
substance of the allegations against them satisfies due process
requirements.  Those cases are inapropos because both involved
termination of civil service employees who are entitled to full
post-termination administrative proceedings.  Here the only
proceeding after the Request for Review is a deferential appeal
to the Illinois Appellate Court.  This Court likewise rejects
Department's argument to apply one facet of the due process
standard articulated in the plurality opinion in <u>Brock</u>, 481 U.S.
at 264:  "notice of the substance of the relevant supporting
evidence."  Again in sharp contrast to this case, <u>Brock</u> involved
temporary reinstatement of a terminated employee pending a full
post-reinstatement evidentiary hearing (<u>id</u>. at 263-67).

investigation and have interviewed additional witnesses during the Request for Review stage (Act §7-101.1(B); 56 Code §2520.575), the record is already frozen at the judicial review stage (Cooper, 196 F.3d at 816). Complainants simply have no opportunity to respond effectively to adverse evidence that was not in the Report.[14]

Nor has Department proffered any evidence that it would be unduly burdensome to turn over the investigative file before rather than after the Request for Review process. In fact, it will be remembered that just that procedure was followed until December 29, 1997 (Jt. St. ¶111). And as already explained, that simple change in timing will result in fewer erroneous dismissals, because complainants will be able to examine fully and to respond to all the evidence against them, rather than having to rely on summaries written to support the decisions to dismiss their claims. And to avoid any possible untoward consequences of such earlier disclosure (such as any breaches of legitimate confidentiality requirements), sensitive materials as defined in the pre-1997 regulation may be removed before

---

[14]   Lemon, 695 F. Supp. at 971 upheld the constitutionality of denying access to the investigative file during the investigation itself. But under the Department procedures in place at the time, access was permitted before the Request for Review (id.). Complainants today do not receive file access until after the Request for Review--a critical difference.

disclosing investigative files to those seeking access.[15]

This second branch of the inquiry thus calls for an answer comparable to that in the preceding section of this opinion. Salazar is required to make available to complainants during the Request for Review process all documents in their investigative files, including notes of witness interviews but excluding sensitive materials as described in Department's pre-1997 regulation.

---

[15] 2 Code §926.210 (1994) provided:

However, the Department shall not allow parties to inspect certain materials which include, but are not limited to:

(1) internal memoranda;

(2) work papers, or notes or other materials reflecting the deliberative processes, mental impressions, or legal theories and advice of the Department;

(3) material generated in preparation for judicial or Commission proceedings except as authorized under applicable discover[y] regulations; or

(4) any documents maintained by the Department pertaining to conciliation or other settlement effort[s] conducted upon any charge, including but not limited to any reports furnished to or prepared by the Department in connection with such conciliation efforts, unless all parties and the Department agree in writing to disclosure and to the persons to whom they may be disclosed.

To provide a level playing field in conjunction with threshold dismissals, it would appear that such materials should not be available to Counsel either (else complainants' rights would be impaired to that extent).

Lastly Cooper asserts that the current Request for Review system violates due process because it does not provide complainants with either a fair appeal or an unbiased decisionmaker (C. R. Mem. 11). Currently Department's Counsel has jurisdiction to review its Director's decision to dismiss a Charge that is not supported by substantial evidence (Act §7-101.1(A)).[16] For Charges filed before January 1, 1996 such Requests for Review were instead filed with and decided by Commission, an independent agency (Act §8-103).

It must be remembered that the Request for Review process takes place only _after_ termination of a complainant's protected right. Once the Director determines there is a lack of substantial evidence, the charge "shall be dismissed by order of

---

[16] Cooper's "no unbiased decisionmaker" argument (C. Mem. 23-26) is rejected, for there is no institutional bias associated with Counsel. Head, 225 F.3d at 804 (citations omitted) teaches:

> Those serving as adjudicators are presumed to act in good faith, honestly, and with integrity. To overcome this presumption, a plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or actual prejudgment of the plaintiff's case. Evidence of prior familiarity with the plaintiff or his or her situation, or even of involvement in the particular matter under consideration, is not adequate by itself to overcome the presumption.

See also Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 496-97 (1976). Hence the ensuing due process analysis focuses only on Cooper's first argument.

the Director and the complainant notified that he or she may seek
review of the dismissal order before the Chief Legal Counsel"
(Act §7A-102(D)(2)(a)). Thus the Request for Review process is
akin to a post-deprivation proceeding or an appeal. In light of
the already-discussed informal nature of Department's
investigative proceedings, the present Request for Review
procedures are inadequate to protect complainants' due process
right to be heard and are insufficient to guard against erroneous
deprivations.

What follows is an overview of the current Request for
Review process. First complainants submit arguments and
materials in support of their Request for Review (56 Code
§2520.575). Department then sends a notice of the filing,
together with the arguments and materials submitted in support,
to respondent and invites respondent to submit a reply (C. St.
¶45). Although since late 1999 Department has required that the
reply be served on complainant (Jt. St. ¶119), complainants have
no opportunity to respond to the arguments or to additional
materials presented in the reply (C. St. ¶49). Attorneys for the
legal division then hold briefing sessions in which they make
recommendations and arguments to Counsel as to whether the
dismissal orders should be upheld. Parties are not permitted to
attend or participate in any way (id. ¶¶64-67), nor are parties
permitted to review all of the documents on which the briefing

attorney and Counsel rely (id. ¶69). In fact Counsel may rely on
documents not even referred to in the investigative report, so
that complainants have total unawareness of such matters (id.
¶73). During the Request for Review inquiry, findings of fact
such as credibility determinations are upheld unless contrary to
the manifest weight of the evidence (Jt. Stip. ¶39).

Simply to recite those procedures raises the hackles in due
process terms. Those Request for Review procedures are
insufficiently robust to counterbalance Department's informal
investigative proceedings and thus to assure fair and effective
consideration of complainants' claims in accordance with due
process (Loudermill, 470 U.S. at 545; Brock, 481 U.S. at 266
(plurality opinion); Mathews, 424 U.S. at 339, 349).

Here too Department has tendered no showing that it would be
unduly burdensome to return jurisdiction over Requests for Review
to Commission. Rather than deferring to investigators' findings
of fact as Counsel now does, Commission's Request for Review
procedure involves a de novo substantial evidence inquiry, as In
re Request for Review by Beatrice Edwards and Illinois Dep't of
Human Rights, No. 1995CF0493, 1997 WL 812493, *2 (Ill. Human
Rights Comm'n Nov. 7, 1997) explains:

> The Department investigator is not an Administrative
> Law Judge, and the investigative process is not a
> hearing. Accordingly, it would be inappropriate to
> apply a manifest weight of the evidence standard. We
> reiterate that the standard for a Request for Review is
> substantial evidence. Substantial evidence exists when

a reasonable mind can find it sufficient to support a
conclusion.

To the same effect, see <u>Lemon</u>, 695 F. Supp. at 972:

> The review before the Commission is a de novo review
> and the Commission is not bound by factual
> determinations made at the Department level.

Although Cooper has not provided numbers that prove
complainants seeking Requests for Review fared better before
Commission than before Counsel, any such attempted statistical
analysis would pose the usual (and valid) problems with that type
of "proof." Instead it suffices to call on the natural
consequence of de novo review: the reduction in erroneous
deprivations because of the opportunity to reweigh factual
determinations <u>after</u> complainants have submitted arguments and
supplemental evidence to challenge findings against them. For
example, Commission has authority to determine that a hearing
should be held on a factual issue before it makes its decision on
a Request for Review, and thus to refer the matter to an
Administrative Law Judge to conduct the proceedings (56 Code
§5300.470).

So the due process violation at issue lies not in the choice
of Counsel as reviewer, but in the insufficiency of the review
procedures to protect against erroneous deprivation of
complainants' rights. This Court is not however disposed to
dictate to Department what route should be taken to cure that
violation--whether by returning to the pre-1996 procedures as

25

such or by implementing their substantial equivalent while continuing to vest jurisdiction in Counsel. It is left to Department how the demands of due process are to be met in that respect.

## Conclusion

For the reasons set forth at length in this opinion, and with there being no dispute as to the material (that is, outcome-determinative) facts, Cooper is entitled to a judgment as a matter of law. Hence Cooper's motion for summary judgment is granted and Salazar's is denied. More specifically, Salazar is ordered:

1. to cease permanently from relying on credibility determinations made without affording the rights of confrontation and cross-examination;

2. to provide complainants who pursue Requests for Review with access to their investigative files, including notes of witness statements but excluding sensitive materials as defined in the pre-1997 regulation (2 Code §926.210 (1994)); and

3. either to return to the Request for Review procedures in place before January 1, 1996 or to implement the substantial equivalent of those procedures while continuing to vest jurisdiction in Counsel.

This order provides the plaintiff class with all of the

relief it seeks, save the potential of an award of attorneys'
fees because the class is a prevailing party. Because the fees
issue is discrete and does not deprive this order of finality
(<u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196 (1988)), final
judgment is being entered in favor of the plaintiff class and
against Director Salazar.

Milton I. Shadur
Senior United States District Judge

Date: November 1, 2001